UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JAMES STUDENSKY, CHAPTER 7 TRUSTEE,<br>    Plaintiff,<br><br>v.<br><br>PEGGY S. BORGFELD, RYAN H. DOWNTON, JEFFREY P. MADISON, and KEVIN J. OWENS,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 6:21-CV-00028-DTG<br><br>ADV. PRO. NO. 20-06062-RBK |

| | | |
|---|---|---|
| In Re:<br><br>LITTLE RIVER HEALTHCARE HOLDINGS, LLC, *et al.*,<br>    Debtors. | §<br>§<br>§<br>§<br>§<br>§ | CASE NO. 18-60526-RBK<br><br>CHAPTER 7 |

## CHAPTER 7 TRUSTEE'S SUPPLEMENTAL MOTION FOR NEW TRIAL

TO THE HONORABLE DEREK T. GILLILAND:

Plaintiff James Studensky, Trustee ("Trustee"), the duly appointed and acting Chapter 7 trustee in the above-captioned bankruptcy case, files this Supplemental Motion for New Trial[1] and respectfully shows as follows.

### Introduction and Summary

Following the conclusion of the jury trial in this matter on July 14, 2023—and the subsequent entry of judgment on August 1, 2023—powerful evidence against Defendants Madison, Downton, and Borgfeld has emerged that was not previously available to the Trustee, nor to the jury or this Court.

---

[1] This Supplemental Motion raises grounds in addition to those presented in the Trustee's Motion for New Trial and is thus intended to supplement rather than replace or supersede that pending motion.

On November 30, 2023, following a five-week criminal jury trial in the Eastern District of Texas, Defendant Madison was convicted of the felony crime of conspiracy to commit illegal remunerations in violation of the federal Anti-Kickback Statute.[2]    During the course of that criminal trial, the jury heard argument and evidence from the United States Attorney that Madison had knowingly committed these federal healthcare crimes against the United States government and that Defendant Downton was his co-conspirator.  Exh. A, Cr. Tr. 259, 264-65.  The jury also heard testimony from cooperating witnesses that was not reasonably available at the time of the trial in this case, either because those who gave it had previously asserted their Fifth Amendment privilege when questioned about the same subject matter, or because they had not yet pled guilty to the crimes committed in furtherance of the conspiracy.

It also became clear during the criminal trial that Defendants had engaged in discovery misconduct in this case by withholding from their document production in this case relevant text messages that they had turned over to the United States government but had not produced to the Trustee in this matter despite the discovery requests that called for their production.

The evidence that came out in the criminal jury trial would have had a dramatic impact on the outcome in this case.  During the trial here, Defendants pursued a "hindsight" theory, arguing that answering whether Little River was insolvent at the time that Defendants took over $20 million in distributions from the hospital properly factored in subsequent events, including the Trustee's $100 million arbitration victory against Blue Cross Blue Shield.  That expert testimony did not, however, factor in that Little River's Executive Director of Sales and Marketing, Todd Cook, and its CEO Madison had engaged in federal healthcare crimes, because they had not yet been

---

[2] *United States v. Hertzberg, et al.*, Cause No. 6:22-CV-003-JDK (E.D. Tex., Tyler Division).

4616150.v1

convicted.[3]  Indeed, Cook had not yet admitted to any wrongdoing, and powerful testimony against Madison from another witness, Ruben Maroni, had previously been withheld under the protection of that witness's Fifth Amendment rights.

Under these circumstances, allowing the verdict in this case to stand and let Defendants retain the millions of dollars in improper distributions they took from Little River would be a grave injustice.  Fortunately, the law provides a remedy.  In this supplemental motion for new trial, the Trustee urges his additional grounds for new trial under Rule 60, because more than 28 days have elapsed since entry of judgment.  For the reasons explained below, the Rule 60 requirements—both on the basis of newly discovered evidence (*i.e.*, Rule 60(b)(2)) and on the basis of misconduct by an opposing party (*i.e.*, Rule 60(b)(3))—are readily satisfied.

## Facts

Defendant Madison was indicted in 2022, and during the discovery phase of this case, the Trustee explored the allegations that he, Downton, and Borgfeld may have engaged in healthcare fraud against the federal government and violations of the Anti-Kickback Statute during their time at Little River.[4]

Defendants' expert witness on insolvency issues, Louis Robichaux, readily acknowledged that if Little River's executives had been engaged in such criminal activity, it would substantially impact his view that Little River was solvent when they made millions of dollars' worth of distributions to themselves.  Exh. B, Robichaux Depo. 166:25-170:8.  Although Robichaux disputed the significance of the indictment, he agreed that if an *adjudication* of criminal activity

---

[3] As the Court may recall, the Trustee was not allowed to disclose the criminal indictments to the jury in this case.  Now, however, there are criminal convictions and plea agreements in place.

[4] Allegations that Little River had committed fraud against private payors, such as Blue Cross Blue Shield, had already been raised and rejected in connection with the arbitration against Blue Cross Blue Shield.  But claims that Little River had engaged in fraud with respect to its federal reimbursements based on the Anti-Kickback Statute had not been adjudicated during the discovery phase of this case.

4616150.v1

were to occur, his hindsight analysis regarding the value of the company would need to take that development into account. *Id.* Further, he testified that any evidence that Mr. Madison knew Little River's billings to the federal government included illegal claims would also need to be considered. *Id.*

Madison's deposition testimony also acknowledged the significant impact that evidence of federal healthcare fraud would have on Little River, agreeing that non-compliance with the federal Anti-Kickback State and the Stark Law would mean "significant financial penalties" and challenges. Exh. C, Madison Depo. 59:11-60:19.[5]

But Defendants were insistent that no such criminal misconduct occurred. Madison testified in his deposition in this case that Little River's team would have taken steps to ensure compliance with the Anti-Kickback Statute in connection with the company's relationships with marketers. Exh. C, Madison Depo. 56:19-57:8. In testimony in the related case between the Trustee and Blue Cross Blue Shield, Madison specifically denied knowing that marketers were sharing marketing fees with referring physicians, save for one instance that resulted in Little River's decision to terminate the marketer the following day. Exh. D, Madison Dep. (5/25/2022) 176:6-25. Downton likewise testified that Little River's practices were all compliant with the Anti-Kickback Statute and that he was not aware of any violations. Exh. E, Downton Depo. 169:2-15, 275:3-18.

One particular marketer who worked with Little River, Ruben Marioni, became a key witness at the criminal trial against Madison. Although not deposed in this case, it became clear at a deposition that Marioni gave in one of the related cases to this one (*Studensky v. United*) that

---

[5] Downton's later testimony at the criminal trial echoed this conclusion: "Q. What if the reason why the valuation [was $300 million] was because Little River was engaged in a criminal practice or something against the law? Would that have affected the value of Little River? A. Sure. It would've taken it – it would have been a very negative thing for it." Exh. A, Cr. Tr. 5765.

he would not give substantive testimony on these matters, preferring to invoke his rights under the Fifth Amendment.

At the criminal trial, however, Marioni provided significant testimony implicating both Madison and Downton in the criminal conspiracy to which he had pled his guilt as a participant. Exh. A, Cr. Tr. 771–804.  Marioni testified that he fully disclosed to Madison and Downton during their first meeting in February 2015 that his marketing services entailed taking a portion of the funds his company would receive from hospitals and using it to compensate physicians for making referrals.  *Id.* at 789.  Marioni further testified that Madison and Downton were aware that attestations his company had provided Little River were false.  *Id.*

Marioni's testimony was further bolstered by the testimony of others, including Robert O'Neal, who testified that Madison was his co-conspirator in the illegal remuneration conspiracy, Exh. A, Cr. Tr. 4758, and that of Todd Cook, who pled guilty to participating in the conspiracy as well.  *Id.* 1213-47.  Indeed, Cook testified extensively about text messages in which he illicitly participated with Madison, Borgfeld, and Downton.  *Id.*  Those text messages—despite being responsive to requests served by the Trustee[6]—were furnished to the government by Borgfeld, *id.* 1227, but were not produced to the Trustee in this litigation.

---

[6] In request No. 1 of the Trustee's First Requests for Production to Defendants, he requested: "A copy of all correspondence *(including* emails, ***text messages, instant messages, and any other form of communications***) between or among any of: Peggy Borgfeld, Jeffrey Madison, Ryan Downton, or Kevin Owens, on the one hand, and, on the other hand: . . . any other person (excluding your counsel), between January 1, 2015 to present regarding any of the following subjects: . . . a. a. the potential bankruptcy, solvency, or Insolvency of any of the Debtors; . . . j. the prepayment review process imposed on any of the Debtors by Blue Cross and Blue Shield of Texas . . . m. the financial performance or financial health of any of the Debtors; . . .v. financial strategy related to the provision of laboratory and pathology services by Debtors; . . . ." (emphasis added).  Exh. F.

Although Defendants made some objections, their responses gave no indication that responsive text messages were being withheld.  *See* Madison Responses to First Request for Production of Documents; Borgfeld Responses to First Request for Production of Documents.  The Trustee was thus entitled to

Included among the items in the text message summary document that Borgfeld produced to the government but withheld in this litigation were the following exchanges. Exh. G, Cr. Tr. Exh. 1058. The messages, if available to the jury, would have affected the outcome in this case because the exchanges support the Trustee's theory of the liability that the Defendants knew or should have known of serious financial issues and risks related to Little River's lab program.

For example, in the following exchange from summer 2015, Cook forwards to Borgfeld a message from physician Jason Demattia, who ultimately entered a civil settlement to resolve allegations involving kickbacks from labs at Little River:

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Incoming | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Todd Cook <+15125169179> | FROM JASON DEMATTIA: Hey man. We need to talk about labs. We have been having big problems with timely reports, not getting all labs requested, not receiving all reports but when we call we get complete reports, also need to have each result sent separately so we can match. Any updates on electronic reporting?? My employees are going to revolt if I cannot fix. Thanks | 7/28/2015 12:54:35 PM |

In October 2015, Borgfeld writes to Dr. O'Neal there are "Lots of problems with lab billing."

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Incoming | Robert O'neil [sic] <+14097812747> | Peggy Borgfeld <+19798205548> | Robert O'neil <+14097812747> | Peggy hope you and baby are doing well. Miss messing with you.<br>Need a time that we can talk as the numbers for labs are off 200 to 300 per month.<br>At first I thought it is you are behind , but now it shows closed out months. | 10/19/2015 10:20:42 AM |

---

conclude that no responsive text message existed. *See* Fed. R. Civ. P. 34(b)(2)(C) ("[A]n objection must state whether any responsive materials are being withheld on the basis of the objection").

4616150.v1

| Incoming | Robert O'neil <+14097812747> | Peggy Borgfeld <+19798205548> | Robert O'neil <+14097812747> | Peggy is there a time we could talk. I know you are busy. | 10/19/2015 3:15:37 PM |
| Outgoing | Robert O'neil <+14097812747> | Robert O'neil <+14097812747> | Peggy Borgfeld <+19798205548> | Hey Robert. I am at airport. Can I call you late tonight. Lots of problems with lab billing. | 10/19/2015 3:16:26 PM |

The next month, November 2015, Madison, Borgfeld, and Downton candidly discuss the prospect

they are actually losing money on BCBS testing, while around the same time Cook texts Borgfeld

requesting expedited processing of his bonus payment "[b]efore we all end up bankrupt."

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947> | Group: +15125692078, +15126807947 | Jeff Madison <+15125692078> | See the txt from Robert below. What is he talking about?<br><br>Talking to Magnuson at One. We have to do different on EEG on Bc Bs as everyone else in 20,000s and they are 3000. We lose five grand every time No we don't lose. We pay them 75% of collections up to 8,000 grand Are you sure about the payment. | 11/12/2015 10:28:14 AM |
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947> | Group: +15125692078, +15126807947 | Ryan Downton <+15126807947> | Is he saying the supplier is losing money on BCBS? That seems unlikely to me. | 11/12/2015 10:29:45 AM |
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947> | Group: +15125692078, +15126807947 | Jeff Madison <+15125692078> | Me too!!!! | 11/12/2015 10:30:20 AM |
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947> | Group: +15125692078, +15126807947 | Jeff Madison <+15125692078> | Peggy? | 11/12/2015 10:30:23 AM |
| Direction | Remote party | To | From | Text | Time stamp |
| Incoming | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Todd Cook <+15125169179> | Before we all end up bankrupt , can you add my bonus into the next check ;)). Gobble Gobble | 11/24/2015 2:17:37 PM |

In March 2016, Borgfeld and Cook have another highly relevant exchange where Borgfeld tells

Cook that Madison "has halted sending labs." Around that same time, the evidence at trial showed

7

that Owens had emailed Madison that deposits at Mangum were "getting to be a very serious problem."  PX 56.

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Outgoing | Todd Cook <+15125169179> | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Did u get the current mangum email? Jeff has halted sending labs. | 3/7/2016 12:49:23 PM |
| Incoming | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Todd Cook <+15125169179> | Yep, Is there a story I am missing? | 3/7/2016 12:50:36 PM |
| Outgoing | Todd Cook <+15125169179> | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | My fault for opening my mouth. And Paul quit in rockdLe | 3/7/2016 12:51:05 PM |

The next month, April 2016, Cook forwarded a message to Madison, Downton, and Borgfeld that celebrated a competitor hospital was being placed on "slow pay or no pay" by BCBS—a time period Defendants repeatedly argued at trial that they had no knowledge or reason to be concerned about Little River's own lab billings to BCBS.  Tr. Vol 1 89:10-12; 156:12-15 (Q:"[In June 2016], did you have any idea that Blue Cross Blue Shield was going to take the actions it ultimately took?" Downton: "No.").

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947>, Todd Cook <+15125169179> | Group: +15125692078, +15126807947, +15125169179 | Todd Cook <+15125169179> | FROM SCOTT JACOBS: Not sure if it's true, but I was just told Integrity Hospital is being audited by BCBS. Rep said he was told that all commissions will be on slow pay or no pay until audit is complete. Let's go take their accounts!!!! | 4/22/2016 9:20:04 AM |
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947>, Todd Cook <+15125169179> | Group: +15125692078, +15126807947, +15125169179 | Jeff Madison <+15125692078> | Perfect | 4/22/2016 10:04:33 AM |
| Incoming | Jeff Madison <+15125692078>, Ryan Downton <+15126807947>, Todd Cook <+15125169179> | Group: +15125692078, +15126807947, +15125169179 | Jeff Madison <+15125692078> | Hell yeah | 4/22/2016 10:04:38 AM |

8

| Outgoing | Jeff Madison <+15125692078>, Ryan Downton <+15126807947>, Todd Cook <+15125169179> | Group: +15125692078, +15126807947, +15125169179 | Peggy Borgfeld <+19798205548> | Yup. Chris is going to the bank. | 4/22/2016 10:05:23 AM |

In August 2016, shortly following an almost $8 million tax distribution to Little River's owners,

Borgfeld wrote Cook that Little River could turn BCBS labs "back on with marketers."

| Direction | Remote party | To | From | Text | Time stamp |
|---|---|---|---|---|---|
| Outgoing | Todd Cook <+15125169179> | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | We can turn bcbs labs back on with marketers if you haven't done so already. | 8/30/2016 8:57:20 PM |
| Incoming | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Todd Cook <+15125169179> | Cool, I will speak to Brandon | 8/31/2016 4:33:40 AM |
| Incoming | Todd Cook <+15125169179> | Peggy Borgfeld <+19798205548> | Todd Cook <+15125169179> | CPL & BCBS, let them CONTINUE bILL patients or go back to LRH | 8/31/2016 7:15:20 AM |

These text messages were relevant and material to the Trustee's allegations that Little

River's rapid lab-growth strategy—and the issues it created in its dealings with Blue Cross and

others—undermined the reliability of Little River's financials and also showed that Defendants

were aware of that. The document should have been produced to Little River but was not.

Downton also testified at the criminal trial that he was aware that Madison produced text messages

of his own to the federal government, Exh. A, Cr. Tr. 5670 ("I knew they had text messages from

Jeff."), but notwithstanding the fact that he was counsel of record for Madison during the discovery

phase of this case, he failed to coordinate the production of Madison's text messages to the

Trustee.[7]

---

[7]  Such messages were directly responsive to request for production number one in the Trustee's First Requests for Production.  Madison only objected specifically to the production of his tax returns and otherwise responded "Defendant will produce responsive documents, if any, after a reasonable search." Madison Responses to First Request for Production of Documents.  Exh. F.

4616150.v1

## Discussion

### A.  Rule 60 Standards

The purpose of Rule 60(b) is to preserve "the delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts." *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984) (quoting, *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)). The Rule is intended "to prevent the judgment from becoming a vehicle of injustice." *United States v. Walus*, 616 F.2d 283, 288 (7th Cir. 1980).  According to *Johnson Waste Materials v. Marshall*, 611 F.2d 593 (5th Cir. 1980), 'the Rule is to be given a liberal construction' and 'is to be construed liberally to do substantial justice.'" *Id.* at 600.

This Motion raises grounds for a new trial on the basis of both Rule 60(b)(2) and Rule 60(b)(3).  All motions under Rule 60(b) must be filed within a "reasonable time."  Fed. R. Civ. P. 60(c)(1).  However, Rule 60(b) motions filed for the reasons set forth in Rule 60(b)(1)-(3) must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id*.  Judgment was entered in favor of Defendants on August 1, 2023; thus, the Trustee's supplemental motion under Rule 60(b)(2) and (b)(3) is timely.

Rule 60(b)(3) authorizes relief from a judgment when the verdict was obtained through "fraud [], misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3).  This includes "misconduct in withholding information called for by discovery." *Id.*; *see also Montgomery v. Hall*, 592 F.2d 278, 279 (5th Cir. 1979) ("Our cases have held that a party may engage in rule 60(b)(3) misconduct if he fails to disclose evidence he knows about and the production of such evidence was clearly called for 'by any fair reading' of the discovery order.");

4616150.v1

Wright & Miller § 2860 ("Failure to disclose or produce materials requested in discovery can constitute 'misconduct' within Rule 60(b)(3), and the term can cover even accidental omissions.").

As the party seeking relief from a judgment under Rule 60(b)(3), the Trustee has the burden to prove: (1) the adverse party engaged in fraud or other misconduct; and (2) the misconduct prevented the Trustee from fully and fairly presenting his case. *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 364 (5th Cir. 2018); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). Notably, unlike other bases for relief under Rule 60(b), Rule 60(b)(3) does not require diligence or that "the information withheld be of such nature as to alter the result in the case." *Id.*; *Cap Exp., LLC v. Zinus, Inc.*, 996 F.3d 1332, 1339 (Fed. Cir. 2021) ("[T]he text of Rule 60(b)(3), which does not mention diligence."). At bottom, the rule "furnishes an escape valve to protect the fairness and integrity of litigation in the federal courts." *Rozier*, 573 F.2d at 1339.

Second, even in cases where no misconduct has occurred, under subsection (b)(2), Rule 60 also permits relief from a judgment on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." In order to obtain relief under Rule 60(b)(2), on grounds of newly discovered evidence, the moving party must establish that: (1) the evidence was discovered after trial; (2) it exercised due diligence to obtain the evidence for trial; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial probably would produce a new verdict. *Rosebud Sioux Tribe*, 733 F.2d at 515 (citing, inter alia, *Johnson Waste*, 611 F.2d at 597).

4616150.v1

### B. The Standards Applied Here

First, with respect to the discovery misconduct relating to the undisclosed text messages, the factual scenario in this case mirrors those found by the Fifth Circuit in *Rozier* and *Hernandez* to justify a new trial.

In *Hernandez,* the Fifth Circuit affirmed the district court's finding that a plaintiff's failure to disclose certain documents prevented the defendant from having a full and fair opportunity to present its case. 907 F.3d at 365-66. The documents at issue in that case were medical records that showed the true reason for a plaintiff's medical treatment. *Id.* at 365. Although the defendant had requested all medical records, the plaintiff produced only a one-page doctor's note and gave no indication additional records existed. *Id.* at 358. Based on the duty under the rules to supplement prior disclosures—and the fact plaintiff had the medical records in his possession at the time of trial—the Fifth Circuit agreed with the district court that the plaintiff had engaged in misconduct, satisfying the first requirement for relief under 60(b)(3). *Id.* at 364-66. Turning to the second requirement—whether the misconduct prevented the moving party from fully presenting his case—the Fifth Circuit endorsed the proposition that prejudice can be presumed when materials are deliberately withheld. *Id.*

In *Rozier*, the product-defect plaintiff learned after trial that there were in fact design reports Ford had previously said did not exist. 573 F.2d at 1337. The Fifth Circuit first concluded that Ford's failure to produce reports that were responsive under a "fair reading" of the discovery requests was clear and convincing evidence that "Ford engaged in misrepresentation and other misconduct" under the rule. *Id.* at 1341. Analyzing whether the nondisclosure prevented the plaintiff from fully and fairly presenting her case, the Fifth Circuit concluded the standard was met

12

because the report would have made a difference in how "counsel approached the case or prepared for trial." *Id.* at 1342.

Here, the withheld evidence concerns text messages that became a centerpiece of the government's case against Madison at the criminal trial. Little River's former director of sales and marketing testified about them extensively and about Madison's enthusiastic responses to the use of the improper dealings with marketers that were fueling Little River's rapid growth in 2015 and 2016. In fairness, this information should have been available to the Trustee in building his case, and also to the jury in considering the questions regarding Defendants' fraudulent transfers and breaches of fiduciary duty. *Compare Rozier*, 573 F.2d at 1342 (finding prejudice and noting that "[i]nevitably, information developed in the discovery stages of the case influenced the decision as to which theories would be emphasized at trial").

In addition to discovery malfeasance, the Court may properly consider "newly discovered evidence" that was not within the control of Defendants at the time of trial. The Eighth Circuit's decision in *Rosebud Sioux Tribe* is instructive. There, the new evidence at issue was grand jury testimony that first came to light in a criminal trial that occurred after judgment was entered in the civil case on appeal. 733 F.2d at 515-16. The appellant cited the criminal testimony as supportive of a new trial because it contradicted the factual underpinnings of the jury's verdict and was not available at the time of the underlying civil case. *Id.* at 515-17. The district court denied the motion for new trial, but the Eighth Circuit reversed. *Id.* The appellate court rejected the argument the later identified criminal testimony was "not evidence which existed at the time of trial," reasoning that because the underlying facts were in existence, the later identified testimony was properly considered to show "perjury existed at the time of trial." *Id.* at 516.

13

Likewise, here Defendants' testimony during the discovery phase of the case denied any impropriety with respect to the use of marketers, but the later criminal trial revealed significant evidence contradicting their denials. Indeed, contrary to Madison's and Downton's testimony that they had no awareness of any compliance issues with marketers, Downton confessed on cross-examination at Madison's criminal trial that at least one marketer continued to be paid *for months* after the Defendants became aware of reports that the marketer had been paying kickbacks to physicians. Exh. A, Cr. Tr. 5704-05. This candid admission—made in contradiction to the testimony Downton gave in discovery during this lawsuit—is sufficient reason alone for a new trial.

Madison, for his part, did not take the stand in the criminal case to rebut the testimony of those who testified against him and the other defendants. Nonetheless, under the reasoning of *Rosebud Sioux Tribe*, the testimony of the other witnesses, including Downton, Marioni, Cook, and O'Neal—as well as the fact of Madison's conviction itself—are properly regarded as newly discovered evidence that would have probably resulted in a different outcome. Indeed, in light of the admissions by the Defendants and their expert on the impact of criminal activity on Little River's financial standing, it is almost impossible to conceive of a jury finding that Little River was solvent or that the distributions were done in good faith and consistent with fiduciary duties had the aforementioned criminal trial evidence been available to them.

## CONCLUSION AND PRAYER

WHEREFORE PREMISES CONSIDERED, the Trustee requests that the Court grant his Motion for New Trial and grant such other and further relief to which he may be justly entitled.

14

4616150.v1

Dated: December 22, 2023

| | |
|---|---|
| */s/ Jennifer F. Wertz* | */s/ Matthew C. Powers* |
| **JACKSON WALKER LLP** | **GRAVES, DOUGHERTY, HEARON & MOODY, P.C.** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Matthew C. Powers (TX Bar No. 24046650) |
| Joshua A. Romero (TX Bar No. 24046754) | Marianne W. Nitsch (TX Bar No. 24098182) |
| Michael C. Roberts (TX Bar No. 24082153) | Brian T. Cumings (TX Bar No. 24082882) |
| 100 Congress Avenue, Suite 1100 | 401 Congress Avenue, Suite 2700 |
| Austin, TX  78701 | Austin, TX  78701 |
| Telephone: (512) 236-2000 | Telephone: (512) 480-5626 |
| Facsimile: (512) 236-2002 | Facsimile: (512) 536-9926 |
| Email: jwertz@jw.com | Email:  bcumings@gdhm.com |
| Email: jromero@jw.com | Email: mpowers@gdhm.com |
| Email: mroberts@jw.com | Email: mnitsch@gdhm.com |
| | |
| *Attorneys for James Studensky, Chapter 7 Trustee* | *Attorneys for James Studensky, Chapter 7 Trustee* |

15

4616150.v1

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users as authorized by Fed. R. Civ. P. 5(b)(2).

/s/ Matthew C. Powers
Matthew C. Powers

4616150.v1